Daniel L. Steele (6336)
Grant M. Sumsion (6445)
SUMSION STEELE & CRANDALL
2100 W. Pleasant Grove Blvd., Suite 250
Pleasant Grove, UT 84062
Telephone: (801) 426-6888
Email: dan@sumsionsteele.com
        grant@sumsionsteele.com

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| JONTUE CHAVEZ, as an heir to Angie Turner and as personal representative of the ESTATE OF ANGIE TURNER, | |
| Plaintiff, | **COMPLAINT AND JURY DEMAND** |
| vs. | |
| SALT LAKE COUNTY; SALT LAKE COUNTY METRO JAIL; ROSIE RIVERA, in her individual and official capacity as Sheriff of Salt Lake County; PAMELA LOFGREEN, in her individual and official capacity commander of Salt Lake County Metro Jail; RYAN GILES, in his individual capacity; JOEL SMITH, in his individual capacity; RICHARD BELL, in his individual capacity; WELLCON INC.; TODD WILCOX, in his individual and official capacity as the Responsible Health Authority of the Salt Lake County Metro Jail; and JOHN and JANE DOES I-XX, in their official and individual capacities, | Civil No.:  2:20-cv-00461-CMR<br><br>Magistrate Judge Cecilia M. Romero |
| Defendants. | |

Plaintiff JONTUE CHAVEZ in her personal capacity and as the personal representative of the ESTATE OF ANGIE TURNER, by and through her attorney, Daniel L. Steele of the law firm of Sumsion Steele & Crandall, and complain as follows:

## **PRELIMINARY STATEMENT**

For more than two weeks, Defendants ignored the obvious medical needs of Angie Turner ("Ms. Turner"), which eventually resulted in Ms. Turner suffering a fatal stroke. Defendants exhibited deliberate indifference and reckless disregard for Ms. Turner causing her death. In the two weeks preceding her death, Ms. Turner suffered debilitating and excruciating pain with little to no assistance from Defendants.

The acts (or failures) of the Defendants described herein were in violation of 42 U.S.C. § 1983 and the United States Constitution, were undertaken by the Defendants and each of them under color of state law, particularly the statutes, ordinances, regulations, policies, customs, practices, and usages of, and under the authority of, Defendant Salt Lake County, and the individual offices of Defendants as officers, agents, contractors, and/or employees of Defendant Salt Lake County.

Plaintiff seeks relief for the Defendants' violations of Ms. Turner's rights guaranteed by the United States Constitution, including under the Eighth and/or Fourteenth Amendments, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988, and for the Defendants' violations of Ms. Turner's rights under the laws of the State of Utah  and the Constitution of the State of Utah. Plaintiff seeks damages, both compensatory and punitive; affirmative relief; an award of attorney's fees, costs, and interest; and other and further relief as is just and equitable.

## JURISDICTION AND VENUE

1.      This action arises under the United States Constitution and federal law, particularly under the provisions of the Eighth and/or Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983 and 1988.

2.      This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

3.      The claims made in this Complaint occurred and arose in the State of Utah, in this District, and in the Central Division. Venue is therefore proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1331.

4.      Jurisdiction for violations of the Utah Constitution is founded upon supplemental jurisdiction because the claims of violations of federal law are substantial and the supplemental claims derive from a common nucleus of operative facts and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Plaintiff seeks damages under federal and state law pursuant to the claims for relief specified below.

6.      Plaintiff requests Attorney fees and costs pursuant to 42 U.S.C. § 1988.

7.      This Court also has jurisdiction over any State claims Plaintiff has brought, pursuant to 28 U.S.C. § 1367.

## PARTIES

8.      Plaintiff Jontue Chavez ("Ms. Chavez") is a citizen of the United States of America. Ms. Chavez is the daughter of Angie Turner ("Ms. Turner"), and the personal

COMPLAINT AND JURY DEMAND                                                    3

representative of her estate. Ms. Chavez is also Ms. Turner's "heir" as that term is defined in Utah Code § 78B-3-105.

9.      At all relevant times herein, Ms. Turner was in custody at the Salt Lake County Metro Jail located in South Salt Lake, Utah.

10.      At all relevant times herein, Defendant Rosie Rivera ("Sheriff Rivera") was the elected Sheriff of Salt Lake County. As the Sheriff, she was the policymaker for the Salt Lake County Sheriff's Office and all of the facilities that the Sheriff's Office oversaw or managed. As relevant to this case, Sheriff Rivera and the Salt Lake County Sheriff's Office had the responsibility to manage, create policy for, and administer county policies applicable to the Salt Lake County Metro Jail that Ms. Turner was housed in. Sheriff Rivera was also responsible for administering and training employees and contractors who attended to inmates with mental and physical health problems. Ms. Turner sues Sheriff Rivera in her official and individual capacity.

11.      At all relevant times herein, Defendant Salt Lake County was the employer, operator, and/or administrator of the Salt Lake County Metro Jail, and was a political subdivision organized and existing under the laws of the State of Utah. Salt Lake County, and its agents, are state actors and are responsible for the day-to-day running of the  Salt Lake County Metro Jail, as well as the policy-making, training, and supervision of the employees of the  Salt Lake County Metro Jail. Among other things, Salt Lake County was responsible for training and supervising its employees to manage and attend to inmates, like Ms. Turner, who had medical and health issues and concerns.

12.      At all relevant times herein, Defendant Wellcon Inc. ("Wellcon") was a provider of healthcare services at the Salt Lake County Metro Jail. Defendant Todd Wilcox is a member

and the registered agent of Wellcon and is/was the medical director of the Salt Lake County Jail System. Wellcon is a Utah corporation headquartered in Salt Lake City, Utah. Wellcon was contracted by Salt Lake County, and as such, was a "state actor." Wasatch was responsible for supplying, administering, and training employees and contractors who attended to the health needs of inmates, including Ms. Turner. Ms. Chavez sues Wellcon in its individual, official, and corporate capacities. Additionally, Ms. Turner sues Wellcon in its capacity as a principal for the negligent and/or otherwise wrongful acts of its agents.

13.    At all relevant times herein, Defendant Todd Wilcox, M.D., ("Dr. Wilcox") was a provider of healthcare services at the Salt Lake County Metro Jail. He is a member, and registered agent of Wellcon. Dr. Wilcox is an individual who was contracted by Wellcon and/or Salt Lake County and as such, was a "state actor." Dr. Wilcox was responsible for supplying, administering, directing, and training employees and contractors who attended to the health needs of inmates, including Ms. Turner. Ms. Chavez sues Dr. Wilcox in his individual and official capacities. Additionally, Ms. Chavez sues Dr. Wilcox in his capacity as a principal for the negligent or otherwise wrongful acts of his agents.

14.    At all relevant times herein, Defendant Ryan Giles ("Mr. Giles"), Joel Smith ("Mr. Smith"), and other jail staff were employed by Salt Lake County at the Salt Lake County Metro Jail. Mr. Giles and Mr. Smith (collectively "Jail Staff Defendants"), along with other jail staff, are individuals who were employed or contracted by Salt Lake County and as such, were "state actors." Jail Staff Defendants, and other jail staff, were responsible for administering and attending to the health and safety, and basic needs of inmates and pretrial detainees, including Ms. Turner. Ms. Chavez sues Jail Staff Defendants in their individual capacities.

15.     At all relevant times herein, Defendant Richard Bell ("Mr. Bell") was the "Responsible Health Authority" of Salt Lake County Metro Jail. Mr. Bell is an individual who was contracted by Salt Lake County and as such, was a "state actor." Mr. Bell was responsible for supervising health care for inmates, assuring that inmates had adequate access to healthcare, training jail and medical staff on providing medical care and creating and enforcing policies regarding healthcare for inmates, including Ms. Turner. Ms. Chavez sues Mr. Bell in his individual, and official capacities. Additionally, Ms. Chavez sues Mr. Bell in his capacity as a principal for the negligent or otherwise wrongful acts of his agents.

16.     At all relevant times herein, Defendant Pam Lofgreen ("Ms. Lofgreen") was employed by Salt Lake County in the position of Chief Deputy and Commander of the Salt Lake County Metro Jail, in charge of setting and implementing the policies and procedures for, and providing supervision over, the Salt Lake County Metro Jail and its employees. Ms. Lofgreen is an individual who was contracted by Salt Lake County and as such, was a "state actor." Ms. Lofgreen was responsible for supplying, administering, directing, and training employees and contractors who attended to the health needs of inmates, including Ms. Turner. Ms. Chavez sues Ms. Lofgreen in her individual and official capacities. Additionally, Ms. Chavez sues Ms. Lofgreen in her capacity as a principal for the negligent or otherwise wrongful acts of her agents.

17.     At all relevant times herein, Doe Officers 1-10 are here identified as unnamed individual(s) were employed as guards, supervisors, or managers at the Salt Lake County Jail, and as such, were state actors. Plaintiff has not yet been able to determine their exact identities but will do so during fact discovery. They are individuals who were directly involved and participated in Ms. Turner's control and care and were knowledgeable about his condition. Their

deliberate indifference to Ms. Turner's serious medical needs caused her undue suffering and untimely death. Ms. Chavez sues Doe Officers 1-10 in their individual and official capacities as guards, supervisors, or managers at the Salt Lake County Metro Jail.

18.     At all relevant times herein, Does 11-20 are here identified as unnamed individual(s) who were employed by Salt Lake County, and as such, were "state actors." Plaintiff has not yet been able to determine their exact identities but will do so during fact discovery. They are individuals who were directly involved and participated in Ms. Turner's control and care and were knowledgeable about his condition. Their deliberate indifference to Ms. Turner's serious medical needs caused her undue suffering and untimely death. Ms. Chavez sues Does 11-20 in their individual and official capacities.

<strong><u>FACTUAL ALLEGATIONS</u></strong>

19.     Angie Turner was booked into the Salt Lake County Metro Jail on or around June 4, 2018.

20.     At all times relevant hereto, Ms. Turner was a pretrial detainee who had not been convicted of the crime that she had been accused of.

21.     As a pretrial detainee, Ms. Turner was entitled to be free from punishment and entitled to medical treatment.

22.     On or around June 18, 2018, Ms. Turner reported to jail staff through the intercom in her cell that she needed medical treatment for a severe headache.

23.      Jail and medical staff told Ms. Turner that she would need to fill out a medical triage request before she could see a nurse.

24.    On June 19, 2018, Ms. Turner again reported to jail and medical staff that she had recurring headaches which began on or around June 12, 2018.

25.    Despite her repeated requests for medical treatment of her headaches, Mr. Giles, Mr. Smith, and other jail staff refused to provide Ms. Turner with the help she needed.

26.    In fact, Mr. Giles, Mr. Smith, and other jail staff often responded to Ms. Turner's requests with disdain, indifference, and profanity.

27.    On at least one occasion, Mr. Smith falsely and recklessly accused Ms. Turner of faking her headaches to receive medication.

28.    Ms. Turner repeatedly turned in sick-call request forms but was told by jail staff that continuing to request medical help for her headaches would not result in her being seen any sooner by a physician.

29.    Defendants all knew, or should have known, about Ms. Turner's severe and recurring headaches.

30.    This inappropriate, inadequate, and callous response to Ms. Turner's medical needs was in accordance with the policy and customs created and condoned by the other Defendants.

31.    Ms. Turner's recurring severe headaches were an obvious sign that Ms. Turner required medical attention to treat a serious underlying condition, this need was obvious to any reasonable layperson.

32.    Defendants should have trained or been trained in recognizing that Ms. Turner was having or was on the verge of having a stroke or developing some other life-threatening condition.

33.    Ms. Turner spent the last weeks of her life terrified that she would suffer a stroke, or some other serious condition, and die in jail.

34.    Ms. Turner's fears were realized due to Defendants' continued indifference to her health and wellbeing.

35.    On June 27, 2018, Ms. Turner screamed out in pain when her throat and tongue became suddenly numb.

36.    Ms. Turner's cell mate used the intercom to also communicate to jail staff to inform them of the medical emergency.

37.    Mr. Giles, who was the housing officer on duty, was slow to respond to Ms. Turner's calls for help and did so in a disinterested manner.

38.    By the time he arrived, Ms. Turner's symptoms had worsened.

39.    Mr. Giles opened the door to the cell and found Ms. Turner screaming that she was having a stroke.

40.    Rather than provide immediate medical attention, Mr. Giles ignored Ms. Turner's comments and obvious symptoms.

41.    Mr. Giles even questioned the sincerity of Ms. Turner's request for medical treatment.

42.    Ms. Turner had difficulty speaking but was able to communicate her symptoms to Mr. Giles. At this point, Ms. Turner's need for immediate medical attention was obvious, including to any reasonable layperson.

43.    Mr. Giles ignored all obvious indications that Ms. Turner was experiencing a life-threatening stroke, however, and refused to provide for emergency medical treatment.

44.    Rather than provide any sort of help, Mr. Giles merely rebuked Ms. Turner, and referred to her as an "asshole."

COMPLAINT AND JURY DEMAND                                                    9

45.    As Mr. Giles left Ms. Turner to die in a state of pain and panic, other detainees heard Mr. Giles mutter, "Fuck her."

46.    Mr. Giles did not do anything to provide Ms. Turner with the immediate emergency medical attention as he was required to do.

47.    This disregard for Ms. Turner's obvious medical needs, and the failure to provide immediate medical attention, constitutes a violation of the law, including deliberate indifference to Ms. Turner's constitutional rights.

48.    When Mr. Giles did finally contact medical staff, he did not convey the urgency of the situation; this resulted in additional and unnecessary delay before a nurse came to evaluate Ms. Turner.

49.    Mr. Smith was the nurse who arrived to evaluate Ms. Turner.

50.    Mr. Smith dismissively ignored statements by Ms. Turner's cell mate that Ms. Turner was having a medical emergency.

51.    Mr. Smith failed to recognize the seriousness of Ms. Turner's condition or chose to intentionally disregard said condition.

52.    Mr. Smith and Mr. Gile's outrageous conduct and disregard for Ms. Turner's medical needs delayed Ms. Turner's treatment.

53.    Mr. Smith and Mr. Gile's outrageous conduct and disregard for Ms. Turner's medical needs caused her condition to worsen and contributed to or caused her death.

54.    After additional inexcusable delay, other jail and medical staff arrived and a non-defendant jail staff member ordered dispatch to call for an ambulance.

55.     Due to the Defendant's negligence and violations of the law, Ms. Turner was pronounced dead at 12:43 am on June 28, 2018.

56.     At all times relevant, Mr. Bell was the responsible Health Authority at Salt Lake County Jail.

57.     The Jail Staff Defendants' failure and refusal to provide Ms. Turner with proper medical evaluation and care constitutes a deliberate indifference to Ms. Turner's constitutional rights, and ultimately lead to her unnecessary suffering and death.

58.     Defendants Mr. Bell, Ms. Lofgreen, Sheriff Rivera, Dr. Wilcox, Wellcon, Salt Lake County, and Salt Lake County Metro Jail (collectively "Supervising Defendants") are all supervising officials, or otherwise responsible for assuring that detainees received necessary medical services. They all had the power and duty to alleviate the conditions, policies, and customs, which led to the constitutional violations Ms. Turner suffered, but refused or failed to do so.

59.     The Supervising Defendants were responsible for ensuring that nurses and staff at the Salt Lake County Metro Jail were trained to recognize and treat inmates' medical conditions in an adequate and reasonable manner. Instead, they created, condoned, or failed to remedy a custom, culture, and practice that encouraged and led to the training and supervision in such a manner that neither medical nor jail staff were able to recognize and provide adequate treatment for Ms. Turner's medical conditions as they occurred both during and prior to June 27, 2018.

60.     As a result of the unconstitutional training, policies, and customs relating to the medical treatment of inmates, which encouraged and condoned callous disregard for the medical

needs and safety of inmates, Defendants were allowed or encouraged to refuse to provide adequate medical treatment to Ms. Turner which led to her suffering and death.

61.     Even though a stroke is a fairly common medical condition, Supervising Defendants, with deliberate indifference toward the medical needs of incarcerated people, failed to ensure that staff employed at the Salt Lake County Metro Jail, including nurses, housing officers, and other staff, were trained to recognize the signs and symptoms of a stroke or other signs and symptoms which may indicate a life-threatening emergency such as persistent and severe headaches.

62.     Supervising Defendants, with deliberate indifference towards the health and safety of incarcerated people at risk of a stroke, failed to ensure that incarcerated people at risk of a stroke, and/or showing early indicators of a stroke, received the proper and adequate medical attention and treatment.

63.     Supervising Defendants, with deliberate indifference towards the health and safety of all incarcerated people, created policies and customs where inmates in need of medical treatment were disregarded and treated with disdain. This led to Defendants to rebuke Ms. Turner for requesting medical treatment and disregard her requests for help.

64.     As a result of these policies, customs described in paragraphs 58–63, Ms. Turner did not receive the life-saving treatment she was entitled to. This in turn caused Ms. Turner's unnecessary suffering and death.

65.     Indicative of the culture, policies, procedures, and customs permitted, condoned, and perpetuated by the Supervisor Defendants which led to the grossly deficient and indifferent medical care system at the Salt Lake County Jail:

a. Carlos Umana, a mentally ill inmate, was allowed to die of starvation and dehydration after spending four months in custody at the Salt Lake County Metro Jail (2011);

b. Alexa Hamme, twenty-five years old, was found unresponsive in her cell at the Salt Lake County Metro Jail and died after the failure to attend to her serious medical needs (2013);

c. Lindsy Goggin died as a result of severe dehydration while being held at the Salt Lake County Metro Jail (2010);

d. Dustin Bliss was found unresponsive in a holding cell in the booking area of the Salt Lake County Metro Jail and died, never having received adequate medical treatment at the Salt Lake County Metro Jail (2015);

e. Meagan Deadrich was twenty-seven weeks pregnant when her baby died and she had to have her uterus removed, all because jail nurses brushed off her complaints of bleeding and simply told her that bleeding during pregnancy is normal (2018);

f. Scott Osterkamp fell off a top bunk and broke his arm, then jail staff refused to provide medical assistance for several days as he turned yellow and became incoherent, notwithstanding repeated calls to jail staff by his former wife who pleaded for medical assistance for Mr. Osterkamp, and, because of the delay in treatment, Mr. Osterkamp died after finally being transferred to a hospital (2017);

g. Lisa Ostler died in extreme pain from peritonitis as her pleas for help were ignored by jail staff. Ms. Ostler pressed the intercom button in her cell at least 16 times asking for help on the night that she died (2016);

COMPLAINT AND JURY DEMAND                                    13

      h.   Daniel Davis was murdered by another inmate, who had been expressing to others his rage toward Mr. Davis and his desire to kill him, but never received any mental health services (2018); and,

      i.   David Walker repeatedly expressed to many his extreme anxiety and fears, but he was never treated by nursing or mental health staff, leading him to commit suicide at Salt Lake County Metro Jail (2011).

66.     Mr. Bell was responsible for ensuring that incarcerated people at the Salt Lake County Metro Jail received timely, responsive, quality medical care.

67.     Mr. Bell was also responsible to arrange for all levels of healthcare for inmates; to assure quality accessibility, and timeliness of health services for inmates; for the training and supervision of all medical personnel; and for the formulation, adoption, execution, implementation, and enforcement of all policies, procedures, and officially sanctioned customs relating to the provisions of medical care at the Salt Lake County Metro Jail.

68.     Mr. Bell failed in meeting those responsibilities as evidenced by Ms. Turner's Death, the actions and misactions of the jail staff defendants which proximately caused Ms. Turner's death, and the similar instances in which inmates were denied necessary medical treatment identified in paragraph 65.

69.     Mr. Bell condoned, encouraged, and perpetuated a culture, customs, and policies by which necessary, timely, appropriate medical care has been denied to incarcerated people, including Ms. Turner.

70.     This culture, customs, and policies, includes, but is not limited to, outrageous barriers to medical treatment, the failures of housing officers to make certain that nurses of

physicians respond to serious medical conditions, and failure of nurses to evaluate and refer for appropriate diagnosis and treatment those detainees who are experiencing life-threatening emergencies.

71.    By creating, condoning, and/or allowing a culture of medical indifference, callousness, and the condonation of medical staff delaying and ignoring the need for reasonable medical evaluation and treatment, Bell has contributed to, and caused the death of Ms. Turner, and other detainees at Salt Lake County Metro Jail.

72.    Sheriff Rivera was responsible for ensuring that incarcerated people at the Salt Lake County Metro Jail received timely, responsive, quality medical care, and creating and enforcing policies and customs to ensure that outcome.

73.    Sheriff Rivera failed in meeting those responsibilities as evidenced by Ms. Turner's Death, the actions and misactions of the jail staff defendants which proximately caused Ms. Turner's death, and the similar instances in which inmates were denied necessary medical treatment identified in paragraph 65.

74.    Sheriff Rivera condoned, encouraged, and perpetuated a culture, customs, and policies by which necessary, timely, appropriate medical care has been denied to incarcerated people, including Ms. Turner.

75.    By creating, condoning, and/or allowing a culture of medical indifference, callousness, and the condonation of medical staff delaying and ignoring the need for reasonable medical evaluation and treatment, Sheriff Rivera has contributed to, and caused the death of Ms. Turner, and other detainees at Salt Lake County Metro Jail.

76.    Mr. Wilcox and Wellcon were responsible for providing training medical staff and creating and enforcing policies to ensure that incarcerated people at the Salt Lake County Metro Jail received timely, responsive, quality medical care.

77.    Mr. Wilcox and Wellcon failed in meeting those responsibilities as evidenced by Ms. Turner's Death, the actions and misactions of the jail staff defendants which proximately caused Ms. Turner's death, and the similar instances in which inmates were denied necessary medical treatment identified in paragraph 65.

78.    Mr. Wilcox and Wellcon condoned, encouraged, and perpetuated a culture, customs, and policies by which necessary, timely, appropriate medical care has been denied to incarcerated people, including Ms. Turner.

79.    By creating, condoning, and/or allowing a culture of medical indifference, callousness, and the condonation of medical staff delaying and ignoring the need for reasonable medical evaluation and treatment, Mr. Wilcox and Wellcon has contributed to, and caused the death of Ms. Turner, and other detainees at Salt Lake County Metro Jail.

80.    Ms. Lofgreen was responsible for ensuring that incarcerated people at the Salt Lake County Metro Jail received timely, responsive, quality medical care, and creating and enforcing policies and customs to ensure that outcome.

81.    Ms. Lofgreen failed in meeting those responsibilities as evidenced by Ms. Turner's Death, the actions and misactions of the jail staff defendants which proximately caused Ms. Turner's death, and the similar instances in which inmates were denied necessary medical treatment identified in paragraph 65.

82.    Ms. Lofgreen condoned, encouraged, and perpetuated a culture, customs, and policies by which necessary, timely, appropriate medical care has been denied to incarcerated people, including Ms. Turner.

83.    By creating, condoning, and/or allowing a culture of medical indifference, callousness, and the condonation of medical staff delaying and ignoring the need for reasonable medical evaluation and treatment, Ms. Lofgreen has contributed to, and caused the death of Ms. Turner, and other detainees at Salt Lake County Metro Jail

84.    Ms. Turner's unnecessary death and suffering was caused by Defendants' tortious and unconstitutional conduct, and Defendants are liable to Ms. Turner's estate for all of her damages.

85.    Defendants' tortious and unconstitutional conduct has caused Ms. Chavez to experience damages, including, but not limited to, the loss of consortium of her mother, Ms. Turner; Defendants are liable to Ms. Chavez for all of her damages.

## FIRST CLAIM FOR RELIEF

**Survival Action, Including Under 42 U.S.C. § 1983 and Utah Code §78B-3-106**

86.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

87.    Ms. Turner, a pretrial detainee who was entitled to be free from punishment and who was entitled to medical treatment for her severe, life-threatening medical condition, under (1) the Due Process clause of the Fourteenth Amendment to the United States Constitution, (2) the Due Process clause of Article I, Section 7 of the Utah Constitution, and (3) the prohibition against the treatment of persons arrested or imprisoned with unnecessary rigor, under Article I, Section 9

of the Utah Constitution, was held in, and under the care and supervision of the Salt Lake County Metro Jail and the other Defendants from June 4, 2018 to June 27, 2018.

88.     Defendants engaged in abuse and treatment of Ms. Turner that was needlessly harsh, degrading, dehumanizing, and objectively unreasonable; this abuse and treatment was the proximate cause of Ms. Turner's unnecessary suffering and untimely death.

89.     Ms. Turner had a constitutional right to receive proper medical evaluation and care while incarcerated in the Salt Lake County Metro Jail.

90.     Defendants had a duty to Ms. Turner to provide her with proper medical evaluation and care while she was incarcerated.

91.     Defendants' failure and refusal to provide Ms. Turner with proper medical evaluation and care constitutes a deliberate indifference to Ms. Turner's constitutional rights, and ultimately lead to her unnecessary suffering and death.

92.     The Supervising Defendants are all supervising officials, or otherwise responsible for assuring that detainees received necessary medical services. They all had the power and duty to alleviate the conditions, policies, and customs, which led to the constitutional violations Ms. Turner suffered, but refused or failed to do so.

93.     The Supervising Defendants were responsible for ensuring that nurses and staff at the Salt Lake County Metro Jail were trained to recognize and treat inmates' medical conditions in an adequate and reasonable manner. Instead, they created, condoned, or failed to remedy a custom, culture, and practice that encouraged and led to the training and supervision in such a manner that neither medical nor jail staff were able to recognize and provide adequate treatment for Ms. Turner's medical conditions as they occurred both during and prior to June 27, 2018.

94.     As a result of the unconstitutional training, policies, and customs relating to the medical treatment of inmates, which encouraged and condoned callous disregard for the medical needs and safety of inmates, Defendants were allowed or encouraged to refuse to provide adequate medical treatment to Ms. Turner which led to her suffering and death.

95.     As a direct and proximate result of the wrongful conduct and deliberate indifference of the Defendants, Ms. Turner consciously suffered severe pain and mental and emotional anguish which could have been prevented had she received proper medical treatment. Defendants' tortious and unconstitutional conduct led to her loss of life and the loss of consortium with Ms. Chavez.

96.     Defendants are liable to Plaintiff for her damages which include, but are not limited to, funeral expenses, loss of earnings based on the probable duration of Ms. Turner's life had her medical condition been detected and treated, and other damages recognized at law, in an amount to be proven at trial.

97.     Plaintiff is entitled to recover from and against the Defendants, jointly and severally, all damages sustained as a result of the Defendants' wrongful conduct and deliberate indifference, including, but not limited to, the damages described above and, in addition, all reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. §§ 1983 and 1988.

98.     Plaintiff is further entitled to recover from and against the Defendants, punitive damages, in an amount determined at trial, for their willful, wanton, deliberate, reckless, and callous indifference toward Ms. Turner's federally protected rights, which proximately caused the extreme, worsening, excruciating pain and suffering experienced by Ms. Turner in her tragic and unnecessary death.

## SECOND CLAIM FOR RELIEF

### Failure to Provide Proper Medical Care

99.     The preceding paragraphs are re-alleged and fully incorporated herein by reference.

100.     Defendants had a duty under the Constitutions of the United States and the State of Utah, and pursuant to the laws and statutes of Utah, to provide timely medical treatment for medical conditions about which they knew or should have known.

101.     Defendants knew about Ms. Turner's medical needs, and with deliberate indifference to such medical needs, acted or failed to act in such a way as to deprive Ms. Turner of necessary and adequate medical care, thus resulting in unnecessary pain and Ms. Turner's death.

102.     Such acts and/or omissions of the Defendants violated rights secured to Ms. Turner under the Eighth and Fourteenth Amendment to the United States Constitution.

103.     Defendants knew of Ms. Turner's medical needs, and with deliberate indifference to her medical needs, acted or failed to act in such manner as to prevent her from obtaining seriously needed medical treatment and care.

104.     Defendants prevented and delayed needed medical treatment and care from reaching Ms. Turner, thus causing the unnecessary suffering and death of Ms. Turner

105.     Defendants breached their duties and/or were deliberately indifferent to Ms. Turner's medical needs by, among other things:

        a.   Disregarding Ms. Turner's complaints of severe headaches and requests to receive treatment for an impending stroke;

b.     Allowing Ms. Turner's obvious symptoms and worsening condition to go unevaluated and untreated and/or ignoring treatment that was necessary and required under the circumstances;

c.     Ignoring Ms. Turner's symptoms and pleas for help at the time of her stroke, ignoring objective and obvious conditions or symptoms for which any reasonable person would have recognized required immediate and additional care;

e.     Refusing to act on Ms. Turner's obvious need to be taken to a hospital or other facility where treatment of her symptoms and condition could be properly addressed, consistent with the level of danger to Ms. Turner's health;

f.     Failing to have adequate policies and/or procedures in place to ensure the medical safety of Ms. Turner and others experiencing precursory and contemporaneous symptoms of a stroke requiring emergency treatment;

g.     Failing to adequately supervise or train its employees and contractors in accordance with appropriate policies, and/or by failing to attend to such policies and procedures intended to ensure that inmates, such as Ms. Turner, were provided a level of health care that a civilized society would think necessary;

h.     Failing to have policies and procedures in place, and/or by failing to adequately supervise or train its employees and contractors in accordance with said policies, and/or by failing to attend to such policies and procedures intended to ensure the reasonable safety and health of inmates and with serious medical issues, such as Ms. Turner;

i.   Failing to have policies and procedures in place, and/or by failing to adequately supervise or train its employees and contractors in accordance with said policies, and/or by failing to attend to such policies and procedures intended to monitor inmates at risk of serious medical complications;

j.   And/or failing to intervene under the circumstances where it was obvious that the medical care and attention defendants were giving to Ms. Turner was inadequate, causing Ms. Turner to suffer and die.

106.   Repeatedly, and over an approximate two-week period, Defendants were deliberately indifferent to Ms. Turner's serious medical needs, including the fact that she was suffering continuous and severe headaches for a period of over a week.

107.   Ms. Turner's need for hospitalization or additional medical intervention under the circumstances was manifestly foreseeable and objectively necessary.

108.   Ms. Turner endured prolonged pain and suffering leading up to her death, even though her condition and risk of an oncoming stroke could have been diagnosed and treated.

109.   Ms. Turner endured prolonged pain and suffering during her stroke, even though said stroke could have been treated and her death prevented.

110.   The Supervising Defendants were responsible for ensuring that nurses and staff at the Salt Lake County Metro Jail were trained to recognize and treat inmates' medical conditions in an adequate and reasonable manner. Instead, they created, condoned, or failed to remedy a custom, culture, and practice that encouraged and led to the training and supervision in such a manner that neither medical nor jail staff were able to recognize and provide adequate treatment for Ms. Turner's medical conditions as they occurred both during and prior to June 27, 2018.

111.    As a result of the unconstitutional training, policies, and customs relating to the medical treatment of inmates, which encouraged and condoned callous disregard for the medical needs and safety of inmates, Defendants failed to provide adequate medical treatment to Ms. Turner which led to her suffering and death.

112.    Even though a stroke is a fairly common medical condition, Supervising Defendants, with deliberate indifference toward the medical needs of incarcerated people, failed to ensure that staff employed at the Salt Lake County Metro Jail, including nurses, housing officers, and other staff, were trained to recognize the signs and symptoms of a stroke or other signs and symptoms which may indicate a life-threatening emergency such as persistent and severe headaches.

113.    Supervising Defendants, with deliberate indifference towards the health and safety of incarcerated people at risk of a stroke, failed to ensure that incarcerated people at risk of a stroke, and/or showing early indicators of a stroke, received the proper and adequate medical attention and treatment.

114.    Supervising Defendants, with deliberate indifference towards the health and safety of all incarcerated people, created policies and customs where inmates in need of medical treatment were disregarded and treated with disdain. This led to Defendants to rebuke Ms. Turner for requesting medical treatment and disregard her requests for help.

115.    As a result of these policies, customs described in paragraphs 58–63, Ms. Turner did not receive the life-saving treatment she was entitled to. This in turn caused Ms. Turner's unnecessary suffering and death.

116.    The policies and customs implemented by the Supervising Defendants led to the unconstitutional punishment of Ms. Turner, including the disregard of her serious medical conditions, refusing her adequate and reasonable medical treatment in violation of her due process rights under the United States and Utah Constitutions.

117.    Ms. Turner suffered damages and losses, including but not limited to the denial of her rights to reasonable and humane medical care, denial of her Constitutional liberty and bodily integrity interests, for pain, suffering, humiliation, and loss of life.

118.    Plaintiff is entitled to compensation for the deprivation of Ms. Turner's constitutional rights and all damages resulting from those deprivations.

119.    Ms. Chavez is entitled to compensation for the loss of consortium, society, and affection she suffered and will continue to suffer, due to the death of her mother.

120.    Due to the egregious nature of Defendants' indifference and reckless disregard for the health, safety, and the very life of Angie Turner, Plaintiff seeks punitive damages against said Defendants as may be allowed by law.

121.    Plaintiff is entitled to attorney's fees and costs pursuant to 42 USC Section 1988.

### THIRD CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### (Against Defendant Joel Giles)

122.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

123.    Mr. Giles deliberately disregarded Ms. Turner's calls for help while she was experiencing a painful and debilitating medical emergency.

124.    Rather than perform his duty to provide medical assistance to Ms. Turner, Mr. Giles insulted and belittled Ms. Turner and showed his disdain for her in front of other detainees.

125.    Mr. Giles's conduct was outrageous and intolerable in that it offends the generally accepted standard of decency and morality which would dictate that a person in Mr. Giles's position would help Ms. Turner rather than belittle her in her pain and suffering.

126.    Based upon Mr. Giles's expressed disdain for Ms. Turner, Mr. Giles intended to cause Ms. Turner to experience emotional distress.

127.    Mr. Giles acted in reckless disregard of the likelihood of causing emotional distress to Ms. Turner.

128.    Throughout her stroke, Ms. Turner suffered extreme emotional distress which was proximately caused by Mr. Gile's mocking and disdainful conduct towards her in her time of need.

129.    Plaintiff is entitled to the damages caused by Mr. Giles's intentional and egregious conduct which resulted in Ms. Turner's extreme emotional distress.

## FOURTH CLAIM FOR RELIEF

### Failure to Train and/or Supervise

130.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

131.    Salt Lake County and Salt Lake County Metro Jail are considered "persons" under 42 U.S.C. § 1983, and thus may be liable for causing constitutional deprivation.

132.    Sheriff Rivera, Salt Lake County, Salt Lake County Metro Jail, Dr. Wilcox, Wellcon, Mr. Bell, and other Salt Lake County Correctional Officials may be held liable in damages for constitutional wrongs caused by their failure to adequately train or supervise their subordinates.

133.    These Defendants foresaw, or should have foreseen, the possibility of inmates in their custody who may suffer from serious health conditions.

134.    These Defendants failed to provide adequate oversight, policies, procedures, or training of their employees or contractors to reasonably provide for the safety and health of inmates with such serious health conditions.

135.    In this case, these Defendants were deliberately indifferent to the health and safety of Ms. Turner, which caused her unnecessary pain and death.

136.    These Defendants, in their individual and official capacities, failed to provide adequate policies, procedures, or training to their employees or contractors in instructing and directing them to adequately monitor and respond to inmates with serious health conditions that subsequently lead to stroke or other life-threatening conditions, which require treatment that was in addition to or different than the treatment provided by these Defendants.

137.    Defendants' actions, inactions, and/or deliberate indifference towards Ms. Turner directly and proximately deprived her of her rights under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, including depriving her of due process of law.

138.    The violation of Ms. Turner's rights is actionable under 42 U.S.C. § 1983, and her estate is entitled to judgment against Defendants for damages in an amount to be determined at trial or hearing.

139.    Plaintiff is entitled to punitive damages, as may be allowed by law, due to Defendants' willful, wanton, and grossly reckless conduct.

140.    Plaintiff is entitled to attorney's fees and costs against Defendants under 42 U.S.C. § 1988.

## FIFTH CLAIM FOR RELIEF

### Unlawful Custom, Policy or Practice - Laxity and/or Indifference

141.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

142.    Defendants had a policy, custom, or practice that tolerates commission of unconstitutional acts by its officers and/or employees.

143.    The institutional defendants and all employees or contractors of Defendants, who are in a position to set the policy, custom, or practice, are liable directly for the consequences of any unconstitutional acts by said persons.

144.    The County corrections officers and employees, Doe Officers 1-10 and Does 11-20, were deliberately indifferent and failed to notice and/or intercede to help Ms. Turner from having a stroke, and/or treating said stroke when it occurred.

145.    This policy, custom or practice is evident by, among other things, repeatedly ignoring Ms. Turner's pleas for help and telling her that she was faking her symptoms and that her additional requests for treatment would not help her get treatment any sooner, ignoring and rebuking Ms. Turner for reporting her stroke when it occurred, ignoring the obvious signs of a stroke and failing to provide reasonable medical care, rebuking other detainees when they attempt to provide medical information useful in Ms. Turner's treatment, failing to provide adequate treatment to Ms. Turner which resulted in her death.

146.    The Defendants' conduct, through those officers and employees, constituted and/or evidenced a custom of laxity and disregard regarding the supervision and monitoring of the health and safety of Ms. Turner, which custom was or became a de facto official policy.

147.    Defendants' actions in allowing such a policy, custom, or practice to develop and exist constituted deliberate indifference to the rights, health, and safety of Angie Turner.

148.    Defendants' custom of laxity and indifference directly and proximately cause Ms. Turner to suffer and deprived her of her rights without due process of law, as applied through the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

149.    Plaintiff is entitled to judgment against these Defendants for damages in an amount to be proved at trial or hearing.

150.    Plaintiff is further entitled to attorney fees and costs against Defendants under 42 U.S.C. § 1988.

151.    Plaintiff is further entitled to punitive damages as may be allowed by law due to Defendants' willful, wanton, and grossly reckless conduct.

## SIXTH CLAIM FOR RELIEF

**Survival Action for Violations of the Constitution of the State of Utah, Article I, Section 7**

152.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

153.    Utah Code Article I, Section 7 states: "No person shall be deprived of life, liberty, or property without due process of law."

154.    The notice provision of the Utah Governmental Immunity Act, as delineated in Utah Code Ann §63G-7-401(2), does not apply to Ms. Turner's State constitutional claim because such claim is self-executing.

155.    A Utah State constitutional provision is self-executing: ". . . if it articulates a rule sufficient to give effect to the underlying rights and duties intended by the framers. In other words, courts may give effect to a provision without implementing legislation if the framers intended the provision to have immediate effect and if "no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed...." *Spackman v. Box Elder School Dist.*, 16 P.3d 533, 535 (S.Ct. Utah 2000). No notice of claim is required for a self-executing Utah constitutional claim: ". . . when a plaintiff brings suit under a 'self executing' Utah constitutional clause, no notice of claim is required. See, e.g., *Heughs Land, L.L.C. v. Holladay City*, 113 P.3d 1024, 1027 (Utah Ct.App.2005). *Tiscareno v. Frasier*, 2009 WL 4730785 (D.Utah 2009) (reversed on other grounds in 639 F.3d 1016 (10th Cir. 2011).

156.    Ms. Turner suffered a flagrant violation of her constitutional rights when Defendants allowed her to go without obvious and necessary medical care and to deteriorate into a life-threatening condition while in their custody and control.

157.    Existing remedies do not redress the injuries and damages Ms. Turner suffered as a result of Defendants' actions and omissions.

158.    Equitable relief was and is wholly inadequate to redress the injuries and damages to Plaintiff, as Ms. Turner is now dead.

159.    Over an approximately two-week period, Defendants exhibited a shocking degree of deliberate indifference and reckless disregard for the serious and evident medical needs of Ms. Turner.

160.    As a direct and proximate result of Defendants' deliberate indifference and reckless disregard, Ms. Turner suffered and died.

161.    Considering Ms. Turner repeatedly asked for medical treatment, Ms. Turner's suffering and death caused by her stroke were manifestly foreseeable.

162.    Ms. Turner endured prolonged pain and suffering, as well as death, even though her condition could have been avoided and treated if Defendants had honored their constitutional obligations.

163.    Accordingly, Plaintiff seeks damages, including compensation for the pain and suffering, and punitive damages as may be allowed by law.

## JURY DEMAND

Plaintiff requests a jury trial on all issues in this case.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for judgment against the Defendants as follows:

1.    For general compensatory damages in an amount to be determined at trial;

2.    For Ms. Turner's pain and suffering in an amount to be determined at trial;

3.    For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

4.    For Plaintiff's costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. 1988; and

5.      For such other and further relief as the Court deems just and proper.

DATED this 26th day of June, 2020.

SUMSION, STEELE & CRANDALL
*Attorneys for Plaintiff*


 */s/ Daniel L. Steele*
Daniel L. Steele